# Supreme Court of Texas

No. 24-0339

Webb Consolidated Independent School District,

*Petitioner*,

v.

Robert Marshall and Amy Marshall,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued October 8, 2025**

JUSTICE LEHRMANN delivered the opinion of the Court.

JUSTICE HAWKINS filed a concurring opinion, in which Justice Young and Justice Sullivan joined.

The Texas Education Code recognizes that school-board members acting in their official capacities have "an inherent right of access to information, documents, and records maintained by the [school] district." TEX. EDUC. CODE § 11.1512(c). The Code provides those board members with the opportunity to sue for injunctive relief when the district does not provide them with requested information and to recover

attorney's fees if they "prevail[]" in such a suit. *Id*. § 11.1512(c-2). In this case, two school-board members sued Webb Consolidated Independent School District under Section 11.1512 and obtained a temporary injunction ordering the District to produce some of the requested information and documents. Before the case proceeded to trial, however, the members' terms on the board expired. The primary issue here is whether the board members nevertheless prevailed under the statute by obtaining injunctive relief, thereby entitling them to recover attorney's fees.

We hold that they did. Although a party generally does not "prevail" for fee purposes by obtaining a temporary injunction, the trial court's order effectively granted the board members the final relief Section 11.1512 authorizes: an injunction requiring the District to timely produce requested information to which the members have an inherent right of access. Additionally, we hold that the board members were not required to exhaust their administrative remedies before filing suit because Section 11.1512(c-2) creates an exception to the general exhaustion requirement. We therefore affirm the court of appeals' judgment.

## I. Background

Robert and Amy Marshall were members of the board of trustees of Webb Consolidated Independent School District. On May 16, 2020, the Marshalls requested information from the District regarding agenda

2

items for an upcoming board meeting.[1]  The following month, the Marshalls sued the District for injunctive relief under Texas Education

---

[1] In the May 16 request, quoted below, the Marshalls sought information and documents regarding six items:

1. Who is the architect for projects [sic] and why is he not signing certificates for payment AIA Document G702-1992?

2. Agenda item #7.  Discussion regarding 2020-2021 District Calendar and Master Schedule.

    A. Where are the Wind Tech Training Classes?

3. Agenda Item #12.  Discussion and Possible action to approve _____ as Construction Management Consultants for building Elementary School to increase enrollment.

    A. Is the board planning on building a new Elementary School?
    B. Where is this school going to be built?
    C. How is building a new school going to increase enrollment?

4. Agenda Item #13.  Presentation by Financial advisor to discuss a Cash Defeasance scenario.

    A. Who is the Financial advisor you are referring to?
    B. What is the Cash Defeasance scenario?

5. Agenda Item #15.  Discussion and possible action to accept the recommendation of the Superintendent to hire the following Classroom Teachers for 2020-2021.  Secondary Teacher, Elementary Teacher, and Middle School Teacher.

    A. We would like to know who you are recommending?
    B. What are their credentials?
    C. How much experience do they have as an educator?
    D. Are their certifications current with all state requirements?
    E. Do they have emergency permit or a standard certification?

3

Code Section 11.1512(c-2), alleging that the District had failed to turn over the information. The Marshalls also sought an award of costs and attorney's fees. *See id.* § 11.1512(c-2) ("A member who prevails in a suit under this subsection is entitled to recover court costs and reasonable attorney's fees.").

On September 15, 2020, the trial court issued a "Temporary Injunction Order" finding, among other things, that the Marshalls "have made . . . a proper request pursuant to" Section 11.1512, that "harm is imminent because [the Marshalls] will be unable to properly address the issues before the Board," and that injunctive relief "is specifically authorized by" Section 11.1512(c-2). The court ordered the District to

> produce to the [Marshalls] the following documents and information pertaining to the May 19, 2020 Board Meeting:
>
> 1. Information and documentation regarding the contractor's application for payment as to [five specific construction] projects[;]
>
>    . . . .
>
> 2. Construction Management Consultants for building Elementary School;
>
> 3. Certification information on the Superintendent recommended Classroom Teachers;
>
> 4. Extension of Administrator(s) Term Contracts including [the] Superintendent . . . i.e. 2019 evaluation.

---

6. Agenda Item 17. Discussion and possible action regarding the extension of Administrator(s) Term Contracts.

   A. Why are we extending the Superintendent Heriberto Gonzalez [contract] without his evaluation in the last 15 months?

4

The order concluded by requiring the District to produce the information within twenty days of the order's execution. The District did not appeal the order.

Amy Marshall's term on the board expired in November 2020. The following month, the Marshalls amended their petition to seek injunctive relief regarding the District's alleged failure to comply with five additional requests for documents and information that Robert Marshall had made in 2019 and 2020 in his capacity as a board member. They later filed a supplemental petition to add claims related to four other requests from 2019.

Meanwhile, the Marshalls were pursuing a separate administrative proceeding against the District stemming from the board's vote to censure them at a September 2019 board meeting. One of the claims asserted in that proceeding was that the Marshalls had requested documents supporting their censure on multiple occasions and that the District violated Section 11.1512 by failing to provide them. In May 2021, the Commissioner of Education dismissed that claim for lack of jurisdiction.[2] The Marshalls did not seek review of the Commissioner's decision but instead added the claim to their pending suit as part of the above-referenced supplemental petition.[3]

---

[2] The Commissioner specifically determined that (1) the Marshalls "failed to exhaust this issue" because they did not include it in their grievance against the District and (2) their pleadings affirmatively negated the claim by asserting that the District had no documents supporting their censure.

[3] The Marshalls filed their supplemental petition in April 2021, after the administrative law judge issued a proposal for decision in the administrative proceeding but before the Commissioner issued a final decision.

5

The Marshalls then filed a motion to compel, complaining about the District's responses to numerous discovery requests. The District filed a plea to the jurisdiction and motion for summary judgment, arguing that (1) the Marshalls failed to exhaust their administrative remedies, (2) Amy Marshall's claims were moot because she was no longer a school-board member, and (3) the District had already provided the Marshalls with all responsive documents that it maintained.[4] The trial court denied the District's motions, and the District appealed that order. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (authorizing an interlocutory appeal of an order that grants or denies a plea to the jurisdiction by a governmental unit).

The same day the District filed its notice of appeal, the trial court signed an order granting the Marshalls' motion to compel. The appeal stayed all further proceedings in the trial court pending its resolution. *Id.* § 51.014(b).

While the appeal was pending, Robert Marshall's term on the board expired, and the District therefore urged the court of appeals to dismiss the suit as moot. The District also continued to argue that the Marshalls' failure to exhaust their administrative remedies deprived the courts of jurisdiction. The court of appeals agreed that any outstanding requests for information and pending requests for injunctive relief were moot because the Marshalls were no longer board members and thus no longer had a statutory right to the requested information. 690 S.W.3d

---

[4] The District also moved for no-evidence summary judgment on the ground that there was no evidence the Marshalls were not provided the requested documents.

698, 704 (Tex. App.—San Antonio 2023). However, the court of appeals concluded that the Marshalls' request for attorney's fees and court costs "presents an issue that is separate from the request for information." *Id.* The court further held that the claim for attorney's fees remained live because the Marshalls "prevailed," at least in part, by obtaining the temporary injunction before their terms expired. *Id.* at 704–05.

## II. Prevailing-Party Status

As noted, a school-board member acting in an official capacity has "an inherent right of access to information, documents, and records maintained by the [school] district." TEX. EDUC. CODE § 11.1512(c). For that reason, a board member may request such information from the district without filing a public information request. *Id.* If the district fails to timely deliver the requested information, the board member may seek "appropriate injunctive relief" and, if he "prevails," may recover court costs and reasonable attorney's fees. *Id.* § 11.1512(c-2). Specifically, the statute provides:

> If a district does not provide the requested information to a member of the board of trustees in the time required under Subsection (c-1), the member may bring suit against the district for appropriate injunctive relief. A member who prevails in a suit under this subsection is entitled to recover court costs and reasonable attorney's fees. . . .

*Id.*

It is undisputed that the Marshalls can obtain no further substantive relief under Section 11.1512(c-2) because they are no longer school-board members. In that sense, their pending claims have become moot. *See Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012) ("A case becomes moot if, since the time of filing, there has ceased

7

to exist a justiciable controversy between the parties—that is, if the issues presented are no longer live . . . ."). Amy Marshall's term expired in November 2020, and Robert Marshall's term expired in November 2022 while the District's appeal of the order denying its plea to the jurisdiction was pending in the court of appeals. Because the Marshalls are no longer school-board members, they no longer have an inherent right to the documents and information at issue. *See* TEX. EDUC. CODE § 11.1512(c). They already obtained some of that information, however, by virtue of the temporary injunction. On that basis, the Marshalls contend they may recover attorney's fees as prevailing parties.

The District responds that for a party to prevail, it must prevail on the merits, and temporary injunctions do not resolve the merits of a claim. Instead, temporary injunctions merely maintain the status quo during the course of the proceedings and do not materially alter the parties' legal relationship. Further, the District asserts, the temporary injunction did not provide full relief because the District had already turned over the information in the order. Therefore, the Marshalls did not prevail before their claims were mooted, so they cannot recover attorney's fees under the statute.

The Marshalls reply that the trial court's temporary injunction provided them with the ultimate goal of their lawsuit—the production of the documents they requested. In that way, the temporary injunction did not merely maintain the status quo; it granted the Marshalls permanent relief because it compelled the production of information and documents. There was no additional, substantive relief that the

8

Marshalls could have received, at least regarding the information covered by the injunction.

The United States Supreme Court recently opined on the very issue now before us: whether a preliminary injunction confers prevailing-party status for attorney's-fees purposes in an otherwise moot case. *See Lackey v. Stinnie*, 604 U.S. 192 (2025). In *Lackey*, drivers whose licenses were suspended under a Virginia statute for failure to pay certain fines challenged the statute's constitutionality and obtained a preliminary injunction enjoining the Commissioner of the Virginia Department of Motor Vehicles from enforcing the statute. *Id.* at 196. The statute was repealed while the case was pending, mooting the claim, but the plaintiffs argued that they had prevailed by obtaining the preliminary injunction and were therefore entitled to attorney's fees. *Id.* at 196–98. The Supreme Court rejected that argument and held that "[a] party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties." *Id.* at 207. The Court further explained that "external events that render a dispute moot do not convert a temporary order designed to preserve the status of the parties into a conclusive adjudication of their rights." *Id.* at 201.

We agree with this analysis, which properly interprets the statutory term "prevail." *Id.* at 199–201. "For more than a century," Texas has followed the "American Rule" requiring parties to bear their own attorney's fees and precluding recovery of fees from an opposing party unless authorized by contract or statute. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006) (citing *Buckhannon*

9

*Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)). As a result, our fee-shifting jurisprudence largely tracks that of our federal counterpart. *See Epps v. Fowler*, 351 S.W.3d 862, 866–68 (Tex. 2011) ("[W]e find federal cases focusing on the meaning of prevailing party instructive.").

*Lackey* properly recognizes that "prevailing party" is "a 'legal term of art.'" 604 U.S. at 199 (quoting *Buckhannon*, 532 U.S. at 603). As the U.S. Supreme Court does when it construes acts of Congress, we presume that when our Legislature "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952). "We presume the Legislature enacted the statute 'with complete knowledge of the existing law and with reference to it.'" *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 572 (Tex. 2015) (quoting *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)).

Our previous decisions discussing the meaning of "prevailing party" comport with the longstanding approach to this term of art. We have explained that "to prevail means to 'obtain actual and meaningful relief, something that materially alters the parties' legal relationship.'" *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 485–86 (Tex. 2019) (quoting *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652 (Tex. 2009)). Moreover, we have stated that "[w]hether a party prevails turns on whether the party

prevails upon the court to award it something, either monetary or equitable." *KB Home*, 295 S.W.3d at 655.

A temporary injunction typically does not confer prevailing-party status because it does not conclusively adjudicate the legal dispute. Rather, a temporary injunction is an "extraordinary remedy" that is generally "intended to preserve the status quo until final judgment." *Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*, 690 S.W.3d 32, 37 (Tex. 2024); *see also Lackey*, 604 U.S. at 200 ("'The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held,' and 'to balance the equities as the litigation moves forward.'" (first quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); then quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017))). To obtain a temporary injunction, a party must show "(1) a cause of action against the party to be enjoined; (2) a probable right to recover on that claim after a trial on the merits; and (3) a probable, imminent, and irreparable injury absent the temporary injunction." *Harley Channelview*, 690 S.W.3d at 37; *see also Kinney v. Barnes*, 443 S.W.3d 87, 94 n.9 (Tex. 2014) ("Absent a showing of a likelihood of success on the merits, a temporary injunction may not issue."). But a *probable* right to recover is not a right to recover, and temporary injunctions are not "tantamount to decisions on the underlying merits." *Lackey*, 604 U.S. at 200 (quoting *Camenisch*, 451 U.S. at 395); *see also Sw. Weather Rsch., Inc. v. Jones*, 327 S.W.2d 417, 422 (Tex. 1959) ("Generally the most expeditious way of obviating the hardship and discomforture of an unfavorable preliminary order is to try the case on its merits and thus secure a

11

hearing wherein the case may be fully developed and the courts, both trial and appellate, may render judgments finally disposing of controversies.").

The "Temporary Injunction Order" issued by the trial court in this case constituted a temporary injunction because it took "immediate effect, before final judgment," and it "(1) require[d] the enjoined party to perform; (2) [was] made effective and operate[d] while suit remain[ed] pending; and (3) compel[led] performance based on a determination that the opposing party's claim ha[d] merit."[5] *Harley Channelview*, 690 S.W.3d at 40. Importantly, however, the order did not merely preserve the status quo or award provisional relief; instead, it granted the Marshalls the complete relief sought under Section 11.1512, ordering the District to produce documents and information to which the Marshalls claimed they were entitled. *See* TEX. EDUC. CODE § 11.1512(c-2). And the District chose to comply with the order rather than appeal it. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) (authorizing an interlocutory appeal from an order that grants or refuses a temporary injunction).

Under the particular circumstances of this case and this statute (Section 11.1512), the order was effectively dispositive as to the four items identified in it. Thus, as to those four items, the reason the Marshalls' claims are no longer "live" is that the Marshalls have prevailed on the merits of the claims—not that later mootness made the

_____

[5] The order so qualified even though it did not contain other "required safeguards for a temporary injunction," like requiring a bond or setting a trial date. *Harley Channelview*, 690 S.W.3d at 40.

12

claims nonjusticiable. For all practical purposes, the claims had already been adjudicated on their merits. When a court orders a party to turn over requested information and the receiving party obtains knowledge of that information, there is no putting the genie back in the bottle.

Indeed, at least as to the categories of information in the trial court's order, the Marshalls "prevailed" in the only way they could have under Section 11.1512(c-2): they obtained injunctive relief requiring production of the information. *See* TEX. EDUC. CODE § 11.1512(c-2). The statute did not authorize the Marshalls to seek or obtain any other kind of relief. When the trial court ordered the District to turn over information and documents and the District did not appeal the order, the Marshalls received "appropriate injunctive relief" and "prevail[ed] in a suit under this subsection." *See id.* Although the temporary injunction was not final as a procedural matter, the Marshalls nevertheless "prevailed" by means of the temporary injunction just as fully as they would have prevailed by means of a final judgment covering the information at issue. The Marshalls therefore "prevail[ed]," under this particular statutory scheme, with respect to the information covered by the temporary injunction. *See id.*

As noted, the District contends that it gave the Marshalls responsive documents before the temporary injunction issued, so the order did not provide the Marshalls with any meaningful relief. However, the trial court held a hearing on the Marshalls' request for injunctive relief and, after considering the evidence, at least impliedly found otherwise in concluding that harm to the Marshalls was imminent and ordering the District to produce the information. The District did

13

not provide a reporter's record of the temporary-injunction hearing, and we therefore presume the evidence was sufficient to support the trial court's findings. *See In re G.X.H.*, 627 S.W.3d 288, 300 (Tex. 2021); *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005) ("If the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court, then a complaining party must present a record of that hearing to establish harmful error.").

Finally, we note that our holding does not entitle the Marshalls to recover attorney's fees incurred throughout the pendency of the case. On the record before us, the Marshalls "prevailed" by obtaining the "Temporary Injunction Order" issued in September 2020, but only as to the documents covered by that order. It follows that the only attorney's fees recoverable are those incurred in connection with the claim to information that was the subject of the temporary injunction. *See Chapa*, 212 S.W.3d at 313 (requiring a fee claimant to segregate recoverable and unrecoverable fees). The order was issued early in the case, which continued for two years and involved many additional claims and requests for information that were rendered moot by the Marshalls' departure from the school board before the trial court granted any relief. Accordingly, the trial court must take that into account in determining the amount of a reasonable, recoverable fee.

### III. Exhaustion of Administrative Remedies

We next address the District's argument that the trial court lacked jurisdiction over the action because the Marshalls were required, and failed, to exhaust their administrative remedies before filing suit.

14

The Legislature may expressly or impliedly grant an agency exclusive jurisdiction to resolve disputes "within the agency's regulatory arena." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016). With respect to such disputes, "[i]f [a] party files suit before exhausting exclusive administrative remedies, the courts lack jurisdiction and must dismiss the case." *Id.* (further explaining that requiring exhaustion "honors the Legislature's intent that 'the appropriate body adjudicates the dispute' first" (quoting *Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998))).

In the context of "disputes that arise within the education system," parties are generally required to exhaust their administrative remedies before filing suit. *Id.* at 545–46. "For well over one hundred years, we have held that persons complaining about the 'management of the school system' or the 'administration of school laws' must exhaust their administrative remedies before courts can exercise jurisdiction." *Id.* at 546. That requirement follows from Section 7.057(a) of the Texas Education Code, which provides that if a "person [is] aggrieved by . . . the school laws of this state,"[6] she "may appeal in writing to the commissioner." TEX. EDUC. CODE § 7.057(a). We have interpreted Section 7.057(a) "to require a person who chooses to appeal to first seek relief through the administrative process." *Marquez*, 487 S.W.3d at 545 (emphases omitted).

---

[6] "'School laws of this state' means Title 1 and [Title 2] and rules adopted under those titles." TEX. EDUC. CODE § 7.057(f)(2). Section 11.1512 falls within Title 2 and is therefore a school law of this state.

However, the administrative-exhaustion requirement is subject to "limited statutory exceptions."[7]  *Id.*  We agree with the court of appeals that Section 11.1512 creates such an exception.  "When construing a statute, our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *In re Est. of Nash*, 220 S.W.3d 914, 917 (Tex. 2007).  Section 11.1512(c-2) straightforwardly provides that a school-board member "may bring suit" when the school district has missed its deadline to turn over information.  TEX. EDUC. CODE § 11.1512(c-2).  The use of the word "suit" contrasts with the general exhaustion requirement in Section 7.057, where the Legislature provides for an "appeal" to the Commissioner by the aggrieved party followed by another "appeal" to the district court.[8] *Id.* § 7.057(a), (c), (d).  Moreover, Section 11.1512 provides for "appropriate injunctive relief," *id.* § 11.1512(c-2), which the Commissioner cannot provide, *see Hou. Fed'n of Tchrs., Loc. 2415 v. Hou. Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987) ("The Commissioner of Education is not authorized to order immediate injunctive relief.").  Instead, the express mechanism by

---

[7] For example, a party is not required to exhaust administrative remedies when an administrative agency acts without authority or raises certain questions of law. *Jones v. Clarksville Indep. Sch. Dist.*, 46 S.W.3d 467, 471 n.3 (Tex. App.—Texarkana 2001, no pet.) (collecting cases).

[8] Indeed, as the court of appeals noted, "[w]hen the Legislature refers to a dispute being brought before the Commissioner of Education—or the dispute is otherwise subject to the exhaustion of administrative remedies—it has consistently used the word 'appeal' rather than the word 'suit.'"  690 S.W.3d at 708 (collecting examples).

16

which a party may obtain injunctive relief under Subsection (c-2) is by filing a suit in court.

Further, "[t]he statutory words must be determined considering the context in which they are used, not in isolation." *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). Section 11.1512 permits school-board members to request information to which they have an inherent right of access without submitting a public information request. TEX. EDUC. CODE § 11.1512(c). When a board member requests information, the school district has only twenty business days to turn over that information. *Id.* § 11.1512(c-1). If the district must delay its response because compliance would be unduly burdensome, then it may take "a reasonable additional period of time, not to exceed [thirty business days]," and it must "inform the [board member] of the reason for the delay . . . and the date by which the information will be provided." *Id.* These provisions demonstrate the Legislature's intent for pertinent information to be placed into the hands of requesting board members quickly.

Yet, if board members must exhaust their administrative remedies by appealing to the Commissioner before seeking relief under Section 11.1512, the Commissioner has until the 240th day after the appeal is filed to issue a decision, after which the aggrieved person may appeal to district court. *Id.* § 7.057(c). The lengthy exhaustion process is incompatible with the speedy procedure envisioned by the Legislature for ensuring board members obtain information to which they have an

17

"inherent right of access."[9] *Id.* § 11.1512(c). Therefore, because Section 11.1512 creates an exception to the general exhaustion requirement, the Marshalls were not required to appeal to the Commissioner before pursuing injunctive relief.[10]

## IV. Conclusion

As a general matter, a party does not "prevail" for attorney's-fees purposes by obtaining a temporary injunction during the pendency of litigation. And when the substantive claims in a case are rendered moot before final judgment, a corresponding claim for attorney's fees based on prevailing-party status is not kept alive by virtue of the prior issuance of such an injunction. However, Section 11.1512 presents an unusual statutory scheme, and this case presents an unusual set of circumstances. We therefore hold that when a school-board member obtains an injunction under Section 11.1512 ordering a school district to

---

[9] To be sure, delay does not by itself create an exception to the general exhaustion requirement. Indeed, the administrative process can often be a more efficient method of resolving disputes than litigation. *See Marquez*, 487 S.W.3d at 544 ("A party who obtains relief through the administrative process avoids the expense and delay of litigation."). But the statute here provides a limited exception to the exhaustion requirement to facilitate prompt access to information that a school-board member needs and that a school district has withheld. The only way to do that, as the plain language of the statute makes clear, is to obtain injunctive relief from the courts. *See* TEX. EDUC. CODE § 11.1512(c-2) ("[A school-board] member may bring suit against the district for appropriate injunctive relief.").

[10] We have also recognized a limited exception to the exhaustion requirement in certain circumstances involving requests for temporary injunctions. *See Marquez*, 487 S.W.3d at 555 (citing *Hou. Fed'n of Tchrs.*, 730 S.W.2d at 646). Because we hold that exhaustion of administrative remedies is not required under Section 11.1512's plain language, we need not address that exception.

immediately turn over requested information and documents, the district complies with that order, and the case becomes moot before final judgment, the board member's claim for attorney's fees as a prevailing party remains live. We also hold that a board member need not exhaust administrative remedies by appealing to the Commissioner before filing suit for injunctive relief under Section 11.1512. Accordingly, we affirm the court of appeals' judgment and remand the case to the trial court for a determination of the Marshalls' reasonable and recoverable attorney's fees.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** April 24, 2026

19